# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ALBERTO-CULVER USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:09-cv-05899 |
| | ) | |
| THE PROCTER & GAMBLE COMPANY | ) | Judge Suzanne B. Conlon |
| and NOXELL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF ALBERTO-CULVER USA, INC.'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND IN THE ALTERNATIVE TO TRANSFER VENUE

Brian D. Sieve, P.C.
Terrence J. Dee, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel for Plaintiff*
*Alberto-Culver USA, Inc.*

November 24, 2009

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................1

ARGUMENT ......................................................................................................................4

I.     The Contract Provision At Issue Here Is A Permissive Forum Selection Clause. ..............4

II.    None Of The Factors Courts Consider In A Section 1404(a) Analysis Supports Transfer To New York. ...................................................................................................7

      A.     Transfer To The Southern District Of New York Is Not "Clearly More Convenient." .................................................................................................7

            1.     Alberto-Culver chose the Illinois courts as its forum ..................................8

            2.     None of the material events took place in New York ..................................8

            3.     None of the relevant evidence is located in New York .............................9

            4.     Illinois is more convenient than New York .................................................9

            5.     Most of the likely witnesses will come from Illinois, Ohio, and Puerto Rico ..............................................................................................9

      B.     Transfer To The Southern District Of New York Will Not "Better Serve" The Interests Of Justice ..........................................................................11

            1.     The Northern District of Illinois is sufficiently familiar with New York contract law .....................................................................................11

            2.     This case will likely proceed to trial faster in this Court than in the Southern District of New York .................................................................11

            3.     The Southern District of New York has no relationship to this case .........12

CONCLUSION ...................................................................................................................12

**Page(s)**

**Cases**

*Allen & Co., LLC v. Sanford USD Medical Center*,
    No. 08-CV-4596, 2008 WL 5387635 (N.D. Ill. Dec. 18, 2008) ................................... 5, 6

*Amoco Oil Co. v. Mobil Oil Corp.*,
    90 F. Supp. 2d 958 (N.D. Ill. 2000) ................................................................................ 11

*Amorose v. C.H. Robinson Worldwide, Inc.*,
    521 F. Supp. 2d 731 (N.D. Ill. 2007) .............................................................................. 8

*Anicom, Inc. v. NetWolves Corp.*,
    No. 00 C 2088, 2000 WL 1644543 (N.D. Ill. Oct. 27, 2000) ......................................... 11

*Aramark Management Services L.P. v. Martha's Vineyard Hospital*, *Inc.*,
    No. 03 CV 1642, 2003 WL 21476091 (N.D. Ill. June 23, 2003)..................................... 6

*Bank of America, N.A. v. Moglia*,
    330 F.3d 942 (7th Cir. 2003) ......................................................................................... 6

*Berry Floor USA, Inc. v. Faus Group, Inc.*,
    No. 08-CV-0044, 2008 WL 4610313 (E.D. Wis. Oct. 15, 2008) ..................................... 8

*Brooke Group Ltd. v. JCH Syndicate 488*,
    663 N.E.2d 635 (N.Y. 1996)............................................................................................ 7

*Clean Harbors Environmental Services Inc. v. A. Pensato Ind. LLC*,
    No. 19996/06, 2008 WL 2265710 (N.Y. Sup. Ct. June 4, 2008)...................................... 7

*Coffey v. Van Dorn Iron Works*,
    796 F.2d 217 (7th Cir. 1986) ...................................................................................... 1, 7

*Continental Casualty Co. v. LaSalle Re Ltd.*,
    500 F. Supp. 2d 991 (N.D. Ill. 2007) ......................................................................... 5, 6

*First National Bank v. El Camino Resources, Ltd.*,
    447 F. Supp. 2d 902 (N.D. Ill. 2006) .............................................................................. 8

*Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*,
    58 F. Supp. 2d 925 (N.D. Ill. 1999) ................................................................................ 4

*Hyman v. Hill & Associates*,
    No. Civ.A 05 C 6486, 2006 WL 328260 (N.D. Ill. Feb. 9, 2006) .............................. 7, 10

*IP Innovation L.L.C. v. Matsushita Electric Industrial Co.*,
    No. 05 C 902, 2005 WL 1458232 (N.D. Ill. June 13, 2005) ...................................... 8, 10

*Jaramillo v. DineEquity, Inc.*,
No. 09 C 1983, 2009 WL 3287406 (N.D. Ill. Oct. 9, 2009) ............................................... 7

*John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors Inc.*,
22 F.3d 51 (2d Cir. 1994) ............................................................................................. 7

*Kafka v. Bellevue Corp.*,
No. 90 C 6709, 1991 WL 49619 (N.D. Ill. Apr. 1, 1991).......................................... 8, 11

*Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd.*,
No. 07-C-4023, 2007 WL 3120011 (N.D. Ill. Oct. 24, 2007) ......................................... 12

*Methode Electronics, Inc. v. Delphi Automotive Systems LLC*,
639 F. Supp. 2d 903 (N.D. Ill. 2009) ............................................................................ 8

*Micro Data Base Systems, Inc. v. Nellcor Puritan Bennett, Inc.*,
165 F.3d 1154 (7th Cir. 1999) ..................................................................................... 7

*Muzumdar v. Wellness International Network, Ltd.*,
438 F.3d 759 (7th Cir. 2006) .................................................................................. 1, 4

*Paper Express, Ltd. v. Pfankuch Maschinen GmbH*,
972 F.2d 753 (7th Cir. 1992) ....................................................................................... 4

*Relational, LLC v. TDMK, LLC*,
No. 07 C 4449, 2008 WL 2704757 (N.D. Ill. July 7, 2008) ........................................... 12

*River West Meeting Associates, Inc. v. Avaya, Inc.*,
No. 03 C 1023, 2003 WL 21026790 (N.D. Ill. May 6, 2003) .......................................... 6

*Saxena v. Virtualabs, Inc.*,
No. 01 C 9905, 2002 WL 992636 (N.D. Ill. May 15, 2002) ..................................... 4, 5, 6

*Sompo Japan Insurance, Inc. v. Alarm Detection Systems, Inc.*,
No. 03 C 2322, 2003 WL 21877615 (N.D. Ill. Aug. 6, 2003).......................................... 4

*Stewart Organization, Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)........................................................................................................ 8

*Walter E. Heller & Co. v. James Godbe Co.*,
601 F. Supp. 319 (N.D. Ill. 1984) .................................................................................. 6

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................................. 7

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

**Other Authorities**

*Black's Law Dictionary* (8th ed. 2004) ............................................................................ 5

## INTRODUCTION

Defendants base their Motion to Dismiss on the premise that the parties agreed to a mandatory forum selection clause in their contractual agreements. They did not. The parties agreed only that if a dispute arose, the state and federal courts in New York would be *an* appropriate venue. Nothing in the contracts, however, states that New York is the *exclusive* venue, or that all disputes *must* be resolved in New York. As such, the clause is a permissive venue provision. *See Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) (distinguishing between permissive venue provisions and mandatory provisions and holding that "***where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive***") (emphasis added). Accordingly, Alberto-Culver USA, Inc. was entirely within its legal rights to sue here, where it is located and where a substantial part of the events giving rise to the dispute occurred.

Defendants' fall-back request that this Court transfer the action under 18 U.S.C. § 1404(a) to the Southern District of New York is equally baseless. Defendants cannot satisfy their burden of proving that New York is *more convenient* than Chicago. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). To the contrary, Alberto-Culver's choice of forum is entitled to substantial deference and the other relevant factors all weigh in favor of keeping the action in Illinois: (1) none of the material events in this case took place in New York; (2) virtually all the physical evidence is located in Illinois and Georgia; (3) none of the parties is located in New York; and (4) the likely witnesses reside in Illinois, Ohio, and Puerto Rico. Accordingly, Defendants' request to transfer under section 1404(a) should be denied.

## FACTUAL BACKGROUND

### *The Parties And Their Negotiations*

Alberto-Culver is a Delaware corporation with its principal place of business in Melrose Park, Cook County, Illinois. (Verified Complaint ("Compl.") ¶ 11.) The Procter & Gamble Company is an Ohio corporation with its principal place of business in Ohio. (*Id.* ¶ 12.) P&G

subsidiary Noxell Corporation is a Maryland corporation with its principal place of business in Maryland. (*Id.* ¶ 13.)[1]

Alberto-Culver purchased the Noxzema brand of skin-care products from Defendants in October 2008. (*Id.* ¶ 1.) There were two in-person meetings between Alberto-Culver and Defendants during the negotiations over that sale. One meeting occurred at P&G's corporate headquarters in Cincinnati, Ohio. (*Id.* ¶ 20.) The other occurred in Puerto Rico, where P&G manufactures certain Noxzema products, including the products at issue in this lawsuit.[2] Most of the substantive contract negotiations took place via telephone and email from each party's corporate headquarters. (*Id.*)

Defendants' assertion that key parties involved in the negotiations all resided in New York is inaccurate. (Defs.' Mem. 2.) In fact, the key participants in the negotiations for Alberto-Culver were located in Illinois:

- Alberto-Culver's principal negotiator was James Spira, an in-house attorney located in Melrose Park, Illinois.

- Three Chicago-based lawyers represented Alberto-Culver and negotiated with P&G on various issues related to the purchase of Noxzema.

- Alberto-Culver used professionals from investment bank Merrill Lynch & Co.'s Chicago office (not just the New York office, as Defendants assert (*id.*)), and the engagement letter was signed by a Merrill managing director based in Chicago. Another Merrill vice president located in Chicago participated in the negotiations and signed a confidentiality agreement with Defendants that was addressed to Merrill's Chicago office.

(Schmidt Aff. ¶¶ 4–5.)

### *The Relevant Contract Language*

To consummate Defendants' sale of the Noxzema brand to Alberto-Culver, the parties signed a series of contracts, including an Asset Sale and Purchase Agreement ("ASP Agreement") and a Transitional Supply Agreement ("TS Agreement"). (Compl. ¶ 1.) Both the ASP Agreement and TS Agreement contain the following identical permissive forum selection clause:

---

[1] P&G and Noxell are referred to collectively in this Response as "Defendants."

[2] Aff. of Gary P. Schmidt in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss Pl.'s Compl. and in the Alternative to Transfer Venue ("Schmidt Aff.") ¶ 3, attached as Ex. A.

With respect to any suit, action or proceeding relating to this Agreement or the other Transaction Documents (each, a "Proceeding"), each party hereto irrevocably (i) agrees and consents to be subject to the jurisdiction of the United States District Court for the Southern District of New York or any State court sitting in the borough of Manhattan in New York City, New York and (ii) waives any objection which it may have at any time to the laying of venue of any Proceeding brought in any such court, waives any claim that such Proceeding has been brought in an inconvenient forum and further waives the right to object, with respect to such Proceeding, that such court does not have jurisdiction over such party.[3]

### *P&G Manufactures Defective Products*

Under the TS Agreement, P&G agreed to continue manufacturing Noxzema products for Alberto-Culver until Alberto-Culver could transition the manufacturing process to its own facilities. (Compl. ¶ 1.) The Noxzema products were manufactured at P&G's facilities in Puerto Rico and then shipped to Alberto-Culver's distribution facilities in Atlanta, Georgia. (*Id.* ¶ 31.)

In early 2009, Alberto-Culver began receiving increased consumer complaints about defective jars of "Original" Noxzema. (*Id.* ¶ 32.) The defects were visually obvious. Instead of Original Noxzema's distinctive smooth, shiny, white cream, the defective jars displayed unappealing characteristics: standing liquid with clumps of cream similar to cottage cheese, grains or shards throughout, and/or a dull and cracked surface. (*Id.* ¶ 35.) Alberto-Culver launched a nationwide investigation into the problem, organizing the investigation from its headquarters in Illinois. (Schmidt Aff. ¶ 6.) Alberto-Culver hired Retail Quality Assurance, headquartered in Darien, Illinois, to conduct a quality audit of products received from P&G. (*Id.* ¶ 7.) Alberto-Culver also hired Microtrace LLC, which is headquartered in Elgin, Illinois, to conduct scientific testing to determine the root cause of the product defects. (*Id.*) Eventually, truckloads of defective Original Noxzema units had to be repurchased nationwide from retailers; those defective units are being stored in Alberto-Culver's warehouses in Illinois. (*Id.* ¶ 8.)

On August 12, 2009, Alberto-Culver filed this suit in the Circuit Court of Cook County, Illinois, asserting a claim for breach of contract and failure to indemnify Alberto-Culver for its costs in analyzing the defects and repurchasing the defective products. (Compl. ¶¶ 45–50.) Defendants removed the case to this Court on September 22, 2009.

---

[3]  Exs. 1 and 2 to the Decl. of Peter J. Macdonald in Supp. of Defs.' Mot. to Dismiss Pl.'s Compl. and in the Alternative to Transfer Venue ¶¶ 11.11(b), 17.02.

**ARGUMENT**

**I.    The Contract Provision At Issue Here Is A Permissive Forum Selection Clause.**

Parties to a contract can agree to a forum selection clause that is either permissive or mandatory. As Defendants' own authority confirms, if a forum selection clause includes only permissive language, then a party is free to sue in any appropriate venue. *See Muzumdar*, 438 F.3d at 762; *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). In a permissive venue provision, parties agree not to object to a particular forum, but do not agree that the forum is the ***only*** forum in which to file suit. *Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*, 58 F. Supp. 2d 925, 927 (N.D. Ill. 1999) ("[W]hen parties to a contract locate jurisdiction in a certain court, it does not necessarily follow that they have agreed to venue only in that court."); *Saxena v. Virtualabs, Inc.*, No. 01 C 9905, 2002 WL 992636, at *2 (N.D. Ill. May 15, 2002) ("[A] permissive forum selection clause evidences the parties' intent that the chosen state is a possible, but not the sole, arena in which a suit can be filed. These clauses prevent a party from contesting the propriety of jurisdiction or venue within the named forum ***but present no impediment to jurisdiction or venue in a forum other than the one specified in the agreement***.") (emphasis added).

To qualify as a mandatory venue provision, the clause must clearly state that the specified venue is the sole and exclusive forum. To do so, the parties must use terms that are mandatory or obligatory in nature. *See Paper Express*, 972 F.2d at 756–57. For example, in the cases Defendants cite in their memorandum in which the courts enforced forum selection clauses, the clauses all contained operative words such as "only" and/or "shall," which evidenced the parties' intent that the clauses were mandatory, not permissive. *Muzumdar*, 438 F.3d at 761 ("jurisdiction and venue . . . ***shall be proper only*** in the . . . courts in Dallas County, Texas" and "any dispute or claim . . . ***shall be proper*** on/before an arbitration panel [in Dallas]") (emphasis added); *Paper Express*, 972 F.2d at 755 ("In all disputes . . . the action ***shall be filed*** in the court which has jurisdiction for the principal place of business of the supplier . . . .") (emphasis added); *id*. at 756 (noting that "[t]he phrase 'shall be filed,' coupled with the phrase 'all disputes,' clearly manifests an intent to make venue compulsory and exclusive"); *Sompo Japan Ins., Inc. v. Alarm Detection Sys., Inc.*, No. 03 C 2322, 2003 WL 21877615, at *1 (N.D. Ill. Aug. 6, 2003) ("[V]enue ***shall be proper*** in Kane County, Illinois should any portion of this contract have to be legally enforced.") (emphasis added); *id.* (noting that "[w]hen a forum selection clause is

prefaced with the language 'shall be,' this is an indication that venue is exclusive"). The use of the word "only" in those cases limits the choice of venue to the forum specified in the clause. Likewise, the word "shall" typically means "has a duty to; more broadly, is required to . . . This is the mandatory sense that drafters typically intend and that courts typically uphold." *Black's Law Dictionary*, p. 1407 (8th ed. 2004).

In this case, the forum selection clause is clearly permissive. Nowhere in the Agreements did the parties use mandatory or obligatory language specifying that New York is the "exclusive" jurisdiction, or the "only" venue. Nor did they state that cases "shall" be filed in New York. As Judge Castillo held in *Continental Casualty Co. v. LaSalle Re Ltd.*, 500 F. Supp. 2d 991, 992, 994–95 (N.D. Ill. 2007), these are characteristics of a permissive forum selection clause:

> Here the clause is not stated as a mandatory venue provision. For instance, it does not state that "all disputes *shall be* resolved" in an Illinois court, that "venue is proper *only* in an Illinois court" or the like. Instead, the clause merely states that the parties consent to the jurisdiction of the courts of the State of Illinois to resolve their disputes.

(emphasis in original, internal citations omitted). *See also Allen & Co. v. Sanford USD Med. Ctr.*, No. 08-CV-4596, 2008 WL 5387635, at *2 (N.D. Ill. Dec. 18, 2008) ("The clause at issue does not contain mandatory or obligatory language as to either venue or jurisdiction. For example, there is no language that 'all disputes *shall be* resolved' in a specific venue, or that 'venue is proper *only* in' a specified court.") (emphasis added, citation omitted).

Moreover, the language in the clause provides only that each party "agrees and consents to be subject to the jurisdiction" of the courts in Manhattan and "waives any objection which it may have at any time" to such a forum for improper venue, inconvenience, or lack of jurisdiction. (Ex. 1 to Macdonald Decl.) Courts in this district have routinely interpreted contracts with such language as permissive forum selection clauses and denied motions to dismiss that relied on such clauses. *See*, *e.g.*, *Saxena*, 2002 WL 992636, at *1 (the employee "consents to and submits . . . to . . . jurisdiction of any state or federal court of competent jurisdiction situated [in] Ohio . . . and agrees that all such courts shall have jurisdiction over Employee with respect to any and all legal proceedings . . . and waives any objection [to] the venue of such legal proceedings in any such courts or that such legal proceedings were brought in an inconvenient forum"); *River W. Meeting Assocs., Inc. v. Avaya, Inc.*, No. 03 C 1023, 2003

WL 21026790, at *2 (N.D. Ill. May 6, 2003) ("With respect to disputes between the parties, the parties agree to submit to the jurisdiction of the state and federal courts of New Jersey.").[4]

Defendants suggest that because the parties agreed to waive "any" objection to venue or jurisdiction in New York, they also "agreed to a specific venue—the state and federal courts of Manhattan—for all disputes relating to the Agreements." (Defs.' Mem. 7.)   But that is a complete logical leap.   Agreeing to waive "any" objections to venue or jurisdiction is **not** the same as agreeing that New York will be the "only" venue for "all" cases.   Indeed, several Northern District decisions have held that forum selection clauses are permissive even though they include waivers of "any" objection to venue or jurisdiction.   *See e.g.*, *Saxena*, 2002 WL 992636, at *1 (the employee "waives **any** objection is [sic] improper that the venue of such legal proceedings in **any** such courts or that such legal proceedings were brought in an inconvenient forum") (emphasis added); *Allen & Co.*, 2008 WL 5387635, at *2 ("Lessee . . . waives **any** right to assert that **any** action instituted . . . in **any** such court is in the improper venue or should be transferred to a more convenient forum.") (emphasis added).

As Defendants admit, the forum selection clauses were "part of a carefully negotiated, $81 million transaction between sophisticated companies."   (Defs.' Mem. 1.)   These parties knew what they were doing and they intentionally chose not to use mandatory or obligatory terms.   *Bank of Am., N.A. v. Moglia*, 330 F.3d 942, 946 (7th Cir. 2003) ("[J]udges usually interpret written contracts . . . according to the conventional meaning of their terms, that is, literally.   This is especially appropriate in the case of a negotiated contract involving substantial stakes between commercially sophisticated parties, as in this case, who know how to say what they mean and have an incentive to draft their agreement carefully.   Such a style of interpretation protects the parties against the vagaries of the litigation process -- a major reason for committing contracts to writing -- without too great a risk of misinterpretation.").   This Court should enforce

---

[4]    Although in different procedural contexts, several other courts in the Northern District of Illinois have held that language nearly identical to the forum selection clauses in the ASP Agreement and TS Agreement is permissive, not mandatory.   *See, e.g.*, *Allen & Co.*, 2008 WL 5387635, at *2; *Cont'l Cas. Co.*, 500 F. Supp. 2d at 994–95; *Aramark Mgmt. Servs. L.P. v. Martha's Vineyard Hosp., Inc.*, No. 03 CV 1642, 2003 WL 21476091, at *3 (N.D. Ill. June 23, 2003) ("The parties agree to submit to the jurisdiction of the courts within the State of Illinois."); and *Walter E. Heller & Co. v. James Godbe Co.*, 601 F. Supp. 319, 320 (N.D. Ill. 1984) ("Lessee does hereby submit to the jurisdiction of any courts [in] Illinois with respect to any dispute, claim or suit arising out of or relating to" the leases.).

the terms as written and hold that the clause at issue is a permissive venue provision. *Micro Data Base Sys., Inc. v. Nellcor Puritan Bennett, Inc.*, 165 F.3d 1154, 1157 (7th Cir. 1999) (Easterbrook, J.) ("Contracts serve commerce best when their terms are enforced rather than twisted after the fact"; defendant "made a business deal . . . and it must live with that choice.").[5]

## II. None Of The Factors Courts Consider In A Section 1404(a) Analysis Supports Transfer To New York.

Section 1404(a) allows a district court to transfer a civil action "[f]or the convenience of parties and witnesses, and in the interest of justice." 28 U.S.C. § 1404(a) (2009). To justify a section 1404(a) transfer, Defendants, as the moving parties, have "the burden of demonstrating that [the Southern District of New York] is ***clearly more convenient*** and/or that a transfer under 1404(a) will ***better serve*** the interests of justice." *Jaramillo v. DineEquity, Inc.*, No. 09 C 1983, 2009 WL 3287406, at *3 (N.D. Ill. Oct. 9, 2009) (emphasis added); *Hyman v. Hill & Assocs.*, No. Civ.A 05 C 6486, 2006 WL 328260, at *2 (N.D. Ill. Feb. 9, 2006) (Conlon, J.) ("Venue should be transferred only if there is a clear balance of inconvenience in the transferor district over the transferee district. Venue may not be transferred simply to shift inconvenience from the defendant to the plaintiff.") (internal citations and quotation marks omitted); *Coffey*, 796 F.2d at 219–20 (moving party has "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient"). Defendants do not, and cannot, meet that burden because the Southern District of New York is not *more* convenient, nor will it *better serve* the interests of justice.

### A. Transfer To The Southern District Of New York Is Not "Clearly More Convenient."

To evaluate the convenience of one forum versus another, courts look at five factors: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses." *Jaramillo*, 2009 WL 3287406, at *3 (internal quotation marks and citation omitted).

---

[5]   The analysis is the same under New York law. *See, e.g.*, *Brooke Group Ltd. v. JCH Syndicate 488*, 663 N.E.2d 635, 638 (N.Y. 1996); *Clean Harbors Envtl. Servs. Inc. v. A. Pensato Ind. LLC*, No. 19996/06, 2008 WL 2265710, at *2–3 (N.Y. Sup. Ct. June 4, 2008) (where contract stated that "the parties agree to submit to the Jurisdiction of the courts of [Massachusetts] for any disputes," it did not make Massachusetts courts forums of exclusive jurisdiction); *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs. Inc.*, 22 F.3d 51, 52–53 (2d Cir. 1994).

An analysis of those factors in this case demonstrates that the Southern District of New York is not more convenient.

        **1.**        **Alberto-Culver chose the Illinois courts as its forum**. "A plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum. Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007) (internal citation omitted); *IP Innovation L.L.C. v. Matsushita Elec. Indus. Co.*, No. 05 C 902, 2005 WL 1458232, at *1 (N.D. Ill. June 13, 2005) (Conlon, J.). Thus, Alberto-Culver's decision to bring this suit in Illinois weighs heavily against transfer to New York. Defendants argue that Alberto-Culver has waived the applicability of this factor due to the forum selection clause, relying on *Methode Electronics, Inc. v. Delphi Automotive Systems LLC*, 639 F. Supp. 2d 903, 907, 909 (N.D. Ill. 2009). (Defs.' Mem. 11.) But in *Methode*, the court disregarded the plaintiff's choice of forum because, among other reasons, the forum selection clause was mandatory, not permissive. *Methode Elecs.*, 639 F. Supp. 2d at 909. Thus, *Methode* is distinguishable.[6]

        **2.**        **None of the material events took place in New York**. As Defendants admit, the "situs of the material events" factor often looks at "where the business decisions causing the breach occurred." *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006). Contrary to Defendants' assertion (Defs.' Mem. 12), **none** of the decisions causing the breach occurred in New York. Indeed, all of the material events occurred elsewhere. The contracts were negotiated between parties located in Illinois and Ohio. (Schmidt Aff. ¶¶ 3–5.) The defects occurred during P&G's manufacturing in Puerto Rico. (Compl. ¶ 7.) When Alberto-Culver received increasing numbers of consumer complaints, it launched a nationwide

---

[6]   *Berry Floor USA, Inc. v. Faus Group, Inc.*, No. 08-CV-0044, 2008 WL 4610313, at *5–6 (E.D. Wis. Oct. 15, 2008), is also inapposite. There, the court found that the plaintiff acted with "improper motives" that "eroded" and warranted "granting less deference" to the plaintiff's choice of forum. Defendants do not suggest that Alberto-Culver has acted in anything other than good faith in filing this lawsuit in Illinois. Moreover, contrary to Defendants' suggestion (Defs.' Mem. 11), "forum selection clauses are not dispositive in motions to transfer under [1404(a)]." *Kafka v. Bellevue Corp.*, No. 90 C 6709, 1991 WL 49619, at *4 (N.D. Ill. Apr. 1, 1991) (Conlon, J.). Rather, forum selection clauses should be considered only as one factor among all others relevant under section 1404(a). *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988) (forum selection clauses "should receive neither dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in § 1404(a).").

investigation run out of its headquarters in Chicago. (Schmidt Aff. ¶ 7.) The analysis of the defects was performed in Illinois by Illinois firms. (*Id.*) Thus, this factor cuts strongly against transfer to New York.

3.     **None of the relevant evidence is located in New York**. Defective units of Original Noxzema—the single most important source of physical evidence in this case—have been gathered from across the country and are being warehoused in Illinois near this Court. Other defective units are warehoused in Georgia at an Alberto-Culver facility. (Schmidt Aff. ¶¶ 8–9.) Evidence of Defendants' conduct in breach of the Agreements, which is manufacturing defective products, is located in Puerto Rico. There is no relevant physical evidence in New York. Thus, the third factor also cuts against transfer.

4.     **Illinois is more convenient than New York**. The principal parties to this case—Alberto-Culver and P&G—are located in Illinois and Ohio. No party is located in New York. And New York is more than twice as far from Defendants' location in Cincinnati (approximately 630 miles) than Chicago is from Cincinnati (approximately 300 miles).[7] There is simply no basis to suggest that New York is a more convenient forum for the parties. *See IP Innovation*, 2005 WL 1458232, at *3 (convenience of the parties did not support section 1404(a) transfer to California where plaintiffs were located in Illinois and none of the parties resided in California).

5.     **Most of the likely witnesses will come from Illinois, Ohio, and Puerto Rico**. Defendants assert that "at least three potential third-party witnesses" reside or work in New York. (Defs.' Mem 13.) One of these potential witnesses is an advertising company, one is a lawyer, and the third is an investment banker. (*Id.* 13–14.) Defendants justify the New York advertising company as a potential witness because it is "one of the principal advertising agencies for the Noxzema brand" as set forth in Schedule 4.18 to the ASP. (*Id.* 14.) In doing so, Defendants conveniently ignore that one of the other "principal advertising agencies" listed on Schedule 4.18 is Leo Burnett Worldwide, Inc., whose principal place of business is in Chicago. (Sieve Decl. ¶ 4.)

---

[7]     Decl. of Brian D. Sieve in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss Pl.'s Compl., and in the Alternative to Transfer Venue ("Sieve Decl.") ¶ 3, attached as Ex. B.

In addition, Defendants fail to identify with any specificity how the lawyer or investment banker could possibly provide relevant testimony to the issues in the lawsuit; at best, those persons were only generally involved in negotiating the Agreements. *See Hyman*, 2006 WL 328260, at *3 (when considering witness convenience for a section 1404(a) transfer, "[a] party must identify key witnesses and describe their testimony with more than vague generalizations"). There is no evidence that these individuals were involved in negotiating any of the provisions relevant to this case, or even that the relevant provisions are ambiguous such that extrinsic evidence from a lawyer or an investment banker would be allowed. Indeed, Defendants acknowledge the remoteness of these individuals to the issues in this case with the disclaimer, "should such testimony be rendered relevant." (Defs.' Mem. 13.) But "even assuming all of the proffered witnesses are actually necessary, [Defendants] fail[] to provide evidence that these witnesses will not appear voluntarily or that their testimony cannot be offered through deposition." *IP Innovation*, 2005 WL 1458232, at *2. That Defendants have to stretch to this length to find a connection with New York highlights the lack of merit to their argument.

The truth is that far more potential witnesses reside in Illinois than New York. For instance, if contract negotiations and drafting are relevant, Alberto-Culver would likely call its own deal lawyers, James Spira, Craig Foley and Jeff Burgan, all of whom are located in Illinois and who negotiated directly with P&G, and Pat Maloney, who is located in Chicago and provided advice to Alberto-Culver on various contract negotiation issues. (Schmidt Aff. ¶ 4.) Alberto-Culver would also likely call its Illinois-based consultants at Merrill Lynch, Brian Callaci and James Ward. (*Id.* ¶ 5.)

More significantly, Defendants have not identified any witnesses located in New York who could offer testimony on the defective product issues underlying this lawsuit. On that score, Alberto-Culver will call representatives from the Illinois-based firms investigating the defects in the P&G-manufactured Noxzema product, such as RQA and Microtrace. (Schmidt Aff. ¶¶ 7–8.) Other relevant witnesses include the Ohio and Puerto Rico-based employees of P&G who were involved in the manufacture of the defective Noxzema product.

*       *       *       *       *

Based on these undisputed facts, there is no basis to conclude that New York is a ***more*** convenient venue than Chicago.  Indeed, given the location of the likely potential witnesses and the defective products, New York is demonstrably less convenient.[8]

**B.      Transfer To The Southern District Of New York Will Not "Better Serve" The Interests Of Justice.**

Section 1404(a)'s "interests of justice" prong "focuses on the efficient administration of the court system," and includes factors such as (1) the court's familiarity with applicable law; (2) the speed at which the case will proceed to trial; and (3) the relationship of the community to the occurrence and the related desire to resolve controversies in its locale.  *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 961–62 (N.D. Ill. 2000).  In this case, these factors weigh against transfer or are neutral.

**1.      The Northern District of Illinois is sufficiently familiar with New York contract law**.  The fact that New York law governs the interpretation of the Agreements will not be a problem for this Court.  "[C]ourts are often called upon to decide substantive legal questions based upon another state's laws.  Generally, contract law is not particularly complex. . . .  Thus, this factor weighs neither in favor of transfer nor retention." *Id.* at 962 (comparing application of contract law in Illinois and New York courts); *see also Kafka v. Bellevue Corp.*, No. 90 C 6709, 1991 WL 49619, at *5–6 (N.D. Ill. Apr. 1, 1991) (Conlon, J.) (application of California law did not weigh heavily in favor of section 1404(a) transfer because "federal district courts are often called upon to interpret another venue's state law," and application of another state's contract law was particularly easy because "[a]fter all, contracts are contracts").  Indeed, this Court is well acquainted with New York contract law.  *See Anicom, Inc. v. NetWolves Corp.*, No. 00 C 2088, 2000 WL 1644543, at *2–3 (N.D. Ill. Oct. 27, 2000) (Conlon, J.) (applying N.Y. contract law).

**2.      This case will likely proceed to trial faster in this Court than in the Southern District of New York**.  P&G concedes that this Court's proceedings are generally as fast—and, in fact, slightly faster—than those in the Southern District of New York.  (Defs.'

---

[8]      Defendants assert that "Alberto-Culver cannot now claim that litigating this suit in New York will be inconvenient or unduly burdensome."  (Defs.' Mem. 13.)  But Alberto-Culver has never claimed that litigating this suit in New York will be *inconvenient*.  Instead, it utilized its rights under the contracts and the law of this state to file this case in Illinois because Illinois is *more convenient* than New York.

Mem. 9 n.9.)  More importantly, this case is already progressing briskly in this Court: a tight discovery schedule has been set, and the case is on the Court's August 2010 trial calendar. (Docket Entry #28.)  Initial disclosures are due on December 2.  (*Id.*)  Transfer to another court—in a different state, with a different judge—would not only cause an initial delay but also likely result in a modified, longer discovery and trial schedule.

       **3.**      **The Southern District of New York has no relationship to this case**. The final factor in the "interests of justice" prong argues strongly in favor of maintaining this case in Illinois.  New York has not played any significant role in this case; none of the relevant events occurred there and none of the parties is from there.  Thus, New York has no particular interest in the outcome of this case.  Illinois, on the other hand, "has a strong interest . . . in ensuring that its resident businesses receive the benefit of the bargains they have negotiated . . . ."  *Relational, LLC v. TDMK, LLC*, No. 07 C 4449, 2008 WL 2704757, at *3 (N.D. Ill. July 7, 2008); *see also Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd.*, No. 07-C-4023, 2007 WL 3120011, at *4 (N.D. Ill. Oct. 24, 2007).

## CONCLUSION

     Defendants' Motion to Dismiss or Transfer is baseless in law and fact.  Courts routinely find forum selection clauses materially identical to the one at issue here to be permissive, not mandatory.  Thus, venue in this district is proper.  In addition, there is no basis for a section 1404(a) transfer to the Southern District of New York, because the parties, events, witnesses, and evidence at issue are all outside of New York.  Accordingly, this Court should deny Defendants' Motion to Dismiss or Transfer.

  Dated:  November 24, 2009                    Respectfully submitted,

                                       /s/ Brian D. Sieve
                                       Brian D. Sieve, P.C.
                                       Terrence J. Dee, P.C.
                                       KIRKLAND & ELLIS LLP
                                       300 North LaSalle
                                       Chicago, Illinois  60654
                                       Telephone:  (312) 862-2000
                                       Facsimile:   (312) 862-2200
                                       brian.sieve@kirkland.com
                                       terrence.dee@kirkland.com

                                     *Counsel for Plaintiff*
                                     *Alberto-Culver USA, Inc.*

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ALBERTO-CULVER USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:09-cv-05899 |
| | ) | |
| THE PROCTER & GAMBLE COMPANY | ) | Judge Suzanne B. Conlon |
| and NOXELL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF GARY P. SCHMIDT

1.     My name is Gary P. Schmidt.  I am Senior Vice President and General Counsel at Alberto-Culver USA, Inc. ("Alberto-Culver").  I have knowledge of the matters set forth in this affidavit.

2.     Alberto-Culver purchased the Noxzema brand of skin-care products from The Proctor & Gamble Company ("P&G") and Noxell Corporation (collectively, "Defendants") in 2008 (the "deal").  Alberto-Culver's headquarters are located in Melrose Park, Cook County, Illinois.

3.     Leading up to the deal, Alberto-Culver met in-person with P&G twice, first for a management presentation at P&G's headquarters in Cincinnati, Ohio, and later at P&G's Noxzema manufacturing facilities in Cayey, Puerto Rico.   All other negotiations took place by phone or email.  All relevant phone calls or emails from Alberto-Culver to Defendants originated at Alberto-Culver's headquarters in Illinois and were directed at persons at P&G's headquarters in Cincinnati.

4.     Alberto-Culver's principal negotiator during the deal was James Spira, an in-house attorney located in Melrose Park, Illinois.  Three other Chicago-based attorneys also

advised Alberto-Culver and represented its interests in the deal: Craig Fochler of Foley & Lardner LLP; Jeffrey Burgan of Leydig, Voit & Mayer, Ltd.; and Patrick Maloney of Bell, Boyd & Lloyd LLP (now known as K&L Gates LLP).

5.    Alberto-Culver's investment banking firm for the deal was Merrill Lynch & Co. ("Merrill").  Alberto-Culver used professionals from Merrill's Chicago office, including Merrill Vice President James Ward, who signed a confidentiality agreement with Alberto-Culver that was addressed to Merrill's Chicago office.  The engagement letter was signed by Merrill's Managing Director of the Investment Banking Group, Brian Callaci, who is also based in Chicago.

6.    In 2009, Alberto-Culver began receiving consumer complaints about defective Noxzema products that were manufactured by Defendants but distributed by Alberto-Culver. Alberto-Culver responded by launching a nationwide investigation into the reported defects.  The investigation was coordinated, organized, and managed from Alberto-Culver's headquarters in Illinois.

7.    As part of that investigation, Alberto-Culver hired Retail Quality Assurance to conduct a quality audit of Noxzema products received from Defendants.  Retail Quality Assurance is headquartered in Darien, Illinois.  Alberto-Culver also hired Microtrace LLC to conduct scientific testing to determine the root cause of the product defects.  Microtrace LLC is headquartered in Elgin, Illinois.

8.    As a result of Retail Quality Assurance's audit, truckloads of defective "Original" Noxzema had to be repurchased from retailers nationwide.  Those defective products are stored in Alberto-Culver's warehouses in Illinois.

9.    During the investigation, Alberto-Culver began inspecting shipments of "Original" Noxzema from Defendants. The defective products that were intercepted before they left Alberto-Culver's distribution facilities are being stored in Alberto-Culver's warehouses in Georgia.

Executed on November  24 , 2009

_Gary P. Schmidt_
Gary P. Schmidt

Sworn to and subscribed before me, this 24TH
Day of _Nov._, _2009_, a Notary Public
In and for _Cook_ County,
State of _Illinois_
_Mary Eileen Nash_
(Signature)
NOTARY PUBLIC
My Commission Expires _Aug 31, 2010_

OFFICIAL SEAL
MARY EILEEN NASH
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/31/10

3

# EXHIBIT B

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALBERTO-CULVER USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:09-cv-05899 |
| | ) | |
| THE PROCTER & GAMBLE COMPANY | ) | Judge Suzanne B. Conlon |
| and NOXELL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF BRIAN D. SIEVE**

I, Brian D. Sieve, an attorney, hereby declare under penalty of perjury:

1.     I am a partner at the law firm of Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, and counsel for Plaintiff Alberto-Culver USA, Inc.

2.     I submit this Declaration in support of Plaintiff Alberto-Culver USA, Inc.'s Response to Defendants' Motion to Dismiss Plaintiff's Complaint and in the Alternative to Transfer Venue.

3.     On November 23, 2009, a search on MapQuest (http://www.mapquest.com) identified the distance between Cincinnati, Ohio and Chicago, Illinois to be 298.25 miles. MapQuest calculated the distance between Cincinnati, Ohio and New York, New York to be 633.75 miles.

4.     Our research determined that, as of November 19, 2009, Leo Burnett Worldwide, Inc.'s principal place of business in the United States is located at 35 West Wacker Drive, Chicago, Illinois 60601.

Dated:  November 24, 2009

/s/ Brian D. Sieve
Brian D. Sieve, P.C.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
brian.sieve@kirkland.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2009, a true and correct copy of the foregoing Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Complaint and in the Alternative to Transfer Venue was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Brian D. Sieve
Brian D. Sieve, P.C.