UNITED STATES DISTRICT COURT NORTHERN
DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| ALBERTO-CULVER USA, INC., | ) |
| Plaintiff, | ) Case No. 09-cv-5899 |
| v. | ) Judge Suzanne B. Conlon |
| THE PROCTER & GAMBLE COMPANY and NOXELL CORPORATION, | ) **JURY DEMANDED** |
| Defendants. | ) |

## ALBERTO-CULVER USA, INC.'S ANSWER TO DEFENDANTS' COUNTERCLAIM

### PARTIES

**COUNTERCLAIM PARAGRAPH 1:**

1. The Procter and Gamble Company is an Ohio corporation with its principal place of business in Ohio.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 1:**

1. Admitted.

**COUNTERCLAIM PARAGRAPH 2:**

2. Noxell Corporation is a Maryland corporation with its principal place of business in Maryland.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 2:**

2. Admitted.

**COUNTERCLAIM PARAGRAPH 3:**

3. Alberto-Culver USA, Inc. is a Delaware corporation with its principal place of business in Illinois.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 3:**

3. Admitted.

## JURISDICTION AND VENUE

**COUNTERCLAIM PARAGRAPH 4:**

4. The amount in controversy exceeds $75,000. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 4:**

4. Admitted.

**COUNTERCLAIM PARAGRAPH 5:**

5. The Court, pursuant to an order dated December 7, 2009, has ruled that venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim and/or counterclaim occurred in this district.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 5:**

5. Alberto-Culver admits that the Court, in its December 7, 2009 order, denied Defendants' Motion To Dismiss The Complaint Or In The Alternative Transfer Venue, in part because a substantial part of the events or omissions giving rise to Alberto-Culver's claims occurred in this district, but denies that this was the sole reason provided by the Court for denying Defendants' motion.

## FACTUAL ALLEGATIONS

**COUNTERCLAIM PARAGRAPH 6:**

6. On October 1, 2008 P&G and Alberto-Culver entered into a contract for the purchase and delivery of certain Noxzema-brand products, referred to herein as the Transitional Supply Agreement ("TSA").

**RESPONSE TO COUNTERCLAIM PARAGRAPH 6:**

6. Admitted.

**COUNTERCLAIM PARAGRAPH 7:**

7. The TSA set out terms under which P&G would manufacture certain Noxzema-brand products for a period of up to one year. Those terms enabled Alberto-Culver to purchase Noxzema-brand products from P&G and sell them to consumers while it developed its own manufacturing and supply capabilities.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 7:**

7. Admitted.

**COUNTERCLAIM PARAGRAPH 8:**

8. Specifically, Alberto-Culver agreed that, during the first 90 days after October 1, 2008, it would purchase its requirements of Noxzema-brand products from P&G (up to a specified maximum), and that, for the period from 90 days to one year after October 1, 2008, it would purchase the amount of Noxzema-brand products it ordered from P&G. TSA § 2.02.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 8:**

8. Alberto-Culver admits that, subject to the limitations and conditions of the TSA, during the first 90 days after October 1, 2008, Alberto-Culver agreed to purchase from P&G,

3

Alberto-Culver's requirements (up to the maximums set forth in Schedule TS2.01 of the TSA) of products specified in the TSA, at the prices set forth on Schedule TS9.01 of the TSA or at such other prices as may be determined in accordance with the TS Agreement. Thereafter, Alberto-Culver agreed to purchase from P&G the amount of products ordered by Alberto-Culver. TSA § 2.02. Alberto-Culver denies all remaining allegations in this Paragraph.

**COUNTERCLAIM PARAGRAPH 9:**

9. For the period beyond the initial 90 days, Alberto-Culver placed monthly orders for Noxzema-brand products. P&G invoiced Alberto-Culver on the last day of each month for products P&G delivered to Alberto-Culver during that month.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 9:**

9. Alberto-Culver admits that for the period beyond the initial 90 days, Alberto-Culver placed monthly orders for Noxzema-brand products, but otherwise denies the allegations in Paragraph 9. Specifically, Alberto-Culver states that for each month, P&G issued invoices bearing on their faces the last day of the respective month and reflecting products delivered to Alberto-Culver during that month, but states that P&G often did not transmit the invoices to Alberto-Culver until after the dates reflected on the faces of the invoices. The date of transmittal serves as the invoice date for the purposes of determining the payment due date.

**COUNTERCLAIM PARAGRAPH 10:**

10. For delivery during the period June 1, 2009 to June 30, 2009, Alberto-Culver ordered, and P&G delivered, products with a total cost to Alberto-Culver of $1,458,944.00. P&G issued an invoice in that amount to Alberto-Culver on June 30, 2009. That invoice, numbered 024 / 5540000200, is attached hereto as Exhibit A.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 10**:

10. Alberto-Culver admits that P&G delivered during the period June 1, 2009 to June 30, 2009, in response to orders placed by Alberto-Culver, products with an invoiced charge of $1,458,944.00, and admits that P&G issued invoice number 024 / 5540000200, attached to Defendants' Counterclaim as Exhibit A. Alberto-Culver denies that P&G issued invoice 024 / 5540000200 on June 30, 2009. Specifically, Alberto-Culver states that it received invoice 024 / 5540000200 on July 13, 2009.

**COUNTERCLAIM PARAGRAPH 11**:

11. For delivery during the period July 1, 2009 to July 31, 2009, Alberto-Culver ordered, and P&G delivered, products with a total cost to Alberto-Culver of $1,585,472.60. P&G issued an invoice in that amount to Alberto-Culver on July 31, 2009. That invoice, numbered 024 / 5540000204, is attached hereto as Exhibit B.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 11**:

11. Alberto-Culver admits P&G delivered during the period July 1, 2009 to July 31, 2009, in response to orders placed by Alberto-Culver, products with an invoiced charge of $1,585,472.60, and admits that P&G issued invoice number 024 / 5540000204, attached to Defendants' Counterclaim as Exhibit B. Alberto-Culver denies that P&G issued invoice 024 / 5540000204 on July 31, 2009. Specifically, Alberto-Culver states that it received invoice 024 / 5540000204 on August 18, 2009.

**COUNTERCLAIM PARAGRAPH 12**:

12. For delivery during the period August 1, 2009 to August 31, 2009, Alberto-Culver ordered, and P&G delivered, products with a total cost to Alberto-Culver of $1,241,233.35.

P&G issued an invoice in that amount to Alberto-Culver on August 31, 2009. That invoice, numbered 024 / 5540000208, is attached hereto as Exhibit C.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 12:**

12. Alberto-Culver admits P&G delivered during the period August 1, 2009 to August 31, 2009, in response to orders placed by Alberto-Culver, products with an invoiced charge of $1,241,233.35, and admits that P&G issued invoice number 024 / 5540000208, attached to Defendants' Counterclaim as Exhibit C. Alberto-Culver denies that P&G issued invoice 024 / 5540000208 on August 31, 2009. Specifically, Alberto-Culver states that it received invoice 024 / 5540000208 on September 18, 2009.

**COUNTERCLAIM PARAGRAPH 13:**

13. For delivery during the period September 1, 2009 to September 30, 2009, Alberto-Culver ordered, and P&G delivered, products with a total cost to Alberto-Culver of $1,026,346.85. P&G issued an invoice in that amount to Alberto-Culver on September 30, 2009. That invoice, numbered 024 / 5540000214, is attached hereto as Exhibit D.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 13:**

13. Alberto-Culver admits P&G delivered during the period September 1, 2009 to September 30, 2009, in response to orders placed by Alberto-Culver, products with an invoiced charge of $1,026,346.85, and admits that P&G issued invoice number 024 / 5540000214, attached to Defendants' Counterclaim as Exhibit D. Alberto-Culver denies that P&G issued invoice 024 / 5540000214 on September 30, 2009. Specifically, Alberto-Culver states that it received invoice 024 / 5540000214 on October 30, 2009.

## COUNTERCLAIM PARAGRAPH 14:

14. The products that P&G delivered to Alberto-Culver during the period June 1, 2009 to September 30, 2009, complied with the relevant provisions of the TSA and were not defective.

## RESPONSE TO COUNTERCLAIM PARAGRAPH 14:

14. Denied.

## COUNTERCLAIM PARAGRAPH 15:

15. Under the TSA, Alberto-Culver was responsible for paying each invoice within thirty calendar days after the date of such invoice. TSA § 10.01. Alberto-Culver is required to pay P&G a late payment charge of 12 percent per annum on any payment not received within thirty calendar days of the date of the relevant invoice. TSA § 10.01.

## RESPONSE TO COUNTERCLAIM PARAGRAPH 15:

15. Alberto-Culver admits that under TSA § 10.01, payment of invoices is to be made within thirty calendar days after receipt of such invoices and a late payment charge of twelve percent per annum applies to payments not received within thirty calendar days of the received date of the relevant invoice. Alberto-Culver denies that it was or is obligated to pay invoice numbers 024 / 5540000200, 024 / 5540000204, 024 / 5540000208, and/or 024 / 5540000214. Alberto-Culver specifically states that it was and is permitted under the New York Uniform Commercial Code to set off damages it has suffered as a result of Defendants' breaches of the TSA against invoice numbers 024 / 5540000200, 024 / 5540000204, 024 / 5540000208, and/or 024 / 5540000214.

**COUNTERCLAIM PARAGRAPH 16:**

16. Alberto-Culver has not paid the invoices numbered 024 / 5540000200, 024 / 5540000204, 024 / 5540000208, or 024 / 5540000214.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 16:**

16. Alberto-Culver admits that it has not paid invoices numbered 024 / 5540000200, 024 / 5540000204, 024 / 5540000208, or 024 / 5540000214, but denies that it was or is obligated to pay invoice numbers 024 / 5540000200, 024 / 5540000204, 024 / 5540000208, and/or 024 / 5540000214. Alberto-Culver specifically states that it was and is permitted under the New York Uniform Commercial Code to set off damages it has suffered as a result of Defendants' breaches of the TSA against invoice numbers 024 / 5540000200, 024 / 5540000204, 024 / 5540000208, and/or 024 / 5540000214.

**COUNTERCLAIM PARAGRAPH 17:**

17. At the time it ordered the products that were shipped during the period June 1 to September 30, 2009, Alberto-Culver had already identified alleged defects in prior-shipped jars of Noxzema Original Cleansing Cream, which are the subject of the Complaint in this action. Alberto-Culver also knew at that time that P&G disputed that prior shipments of product were defective. Nevertheless, Alberto-Culver ordered the additional products shipped during the period June 1, 2009 to September 30, 2009, and Alberto-Culver accepted delivery of all the product in the shipments corresponding to the invoices attached hereto as Exhibits A-D.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 17:**

17. Alberto-Culver admits that prior to June 1, 2009, it had become aware that P&G had manufactured and shipped defective products, and admits ordering and receiving the

products corresponding to the invoices attached to Defendants' Counterclaim as Exhibits A-D. Alberto-Culver denies all remaining allegations in this Paragraph.

**COUNTERCLAIM PARAGRAPH 18**:

18. Upon information and belief, at the time Alberto-Culver ordered the product delivered between June 1, 2009 and September 30, 2008 [sic] it had no good faith intent to pay for those orders.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 18**:

18. Denied.

**COUNTERCLAIM PARAGRAPH 19**:

19. The products P&G shipped to Alberto-Culver during the period June 1 to September 30, 2009 included several Noxzema-brand products other than Noxzema Original Cleansing Cream. The products P&G shipped during that period included several products as to which Alberto-Culver has not asserted any claim of product defect.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 19**:

19. Alberto-Culver admits that P&G shipped products other than Noxzema Original Cleansing Cream during the period June 1 to September 30, 2009, and admits that there was at least one product shipped to Alberto-Culver by P&G during the period June 1 to September 30, 2009, for which Alberto-Culver has not asserted a claim of product defect to date. Alberto-Culver denies all remaining allegations in this Paragraph.

## COUNTERCLAIM I
## Breach of Contract

**COUNTERCLAIM PARAGRAPH 20:**

20.   P&G incorporates and realleges paragraphs 1-19 as if fully set forth herein.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 20:**

20.   Alberto-Culver incorporates its responses to Paragraphs 1-19 as if fully set forth herein.

**COUNTERCLAIM PARAGRAPH 21:**

21.   The TSA is a valid and enforceable contract.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 21:**

21.   Admitted.

**COUNTERCLAIM PARAGRAPH 22:**

22.   Alberto-Culver's failure to pay the invoices numbered 024 / 5540000200, 024 / 5540000204, 024 / 5540000208, and 024 / 5540000214, violated the terms of the TSA, including the following provisions:

(a)   Section 10.01 of the TSA, which provides: "Invoicing and Payment.... Except as otherwise provided in the Transitional Services Agreement, Buyer will be responsible for paying each invoice within thirty (30) calendar days after the date of such invoice .... Buyer will pay Sellers a late payment charge of twelve (12) percent per annum on any payment not received within thirty (30) calendar days of the date of the relevant invoice."

(b)   The implied duty of good faith and fair dealing.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 22:**

22.   Denied.

**COUNTERCLAIM PARAGRAPH 23:**

23. P&G made demand on Alberto-Culver to pay the amounts due and owning. Alberto-Culver has refused to pay, and continues not to pay, any of the amounts owing.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 23:**

23. Alberto-Culver admits that it has not paid P&G invoices numbered 024 / 5540000200, 024 / 5540000204, 024 / 5540000208, and 024 / 5540000214 because Alberto-Culver is lawfully entitled under the New York Uniform Commercial Code to set off the damages it has suffered from Defendants' breaches of the TSA against invoice numbers 024 / 5540000200, 024 / 5540000204, 024 / 5540000208, and/or 024 / 5540000214, and admits that P&G has sought payment of those invoices. Alberto-Culver denies all remaining allegations in this Paragraph.

**COUNTERCLAIM PARAGRAPH 24:**

24. Alberto-Culver has breached, and continues to breach, the terms of provisions of the TSA.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 24:**

24. Denied.

**COUNTERCLAIM PARAGRAPH 25:**

25. As a direct and proximate result of Alberto-Culver's breach of the TSA, P&G has been damaged in an amount not less than $5,311,996.80, plus interest.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 25:**

25. Denied.

**COUNTERCLAIM PARAGRAPH 26**:

26. On account of Alberto-Culver's breaches, P&G has suffered losses in an amount not less than $5,311,996.80, plus interest at a rate of not less that $53,119 a month, and attorney's fees.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 26**:

26. Denied.

## COUNTERCLAIM II
### Indemnification

**COUNTERCLAIM PARAGRAPH 27**:

27. P&G incorporates and realleges paragraphs 1-26 as if fully set forth herein.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 27**:

27. Alberto-Culver incorporates its responses to Paragraphs 1-26 as if fully set forth herein.

**COUNTERCLAIM PARAGRAPH 28**:

28. The TSA is a valid and enforceable contract.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 28**:

28. Admitted.

**COUNTERCLAIM PARAGRAPH 29**:

29. Under the TSA, Alberto-Culver agreed to indemnify P&G for "any losses, liabilities, damages, costs and expenses (including without limitation reasonable fees and expenses of attorneys incurred in investigation or defense of any Action) whether or not

involving a third party Action (collectively "Demands"), arising out of or related to breach of this TS Agreement by [Alberto-Culver]...." TSA Para. 12.01.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 29:**

29. Alberto-Culver admits that this Paragraph contains an accurate quote of a portion of TSA § 12.01. Alberto-Culver denies that TSA § 12.01 applies to the facts alleged in Defendants' counterclaims and denies that Alberto-Culver has breached the TSA.

**COUNTERCLAIM PARAGRAPH 30:**

30. Alberto-Culver has breached its obligation to indemnify P&G.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 30:**

30. Denied.

**COUNTERCLAIM PARAGRAPH 31:**

31. As a direct and proximate result of Alberto-Culver's breach, P&G has been damaged in an amount not less than $5,311,996.80 plus interest at a rate of not less than $53,119 per month, and attorney's fees.

**RESPONSE TO COUNTERCLAIM PARAGRAPH 31:**

31. Denied.

**AFFIRMATIVE DEFENSES**

Alberto-Culver alleges the following affirmative defenses without assuming the burden of proof for any defense for which Alberto-Culver would not otherwise bear the burden of proof.

## FACTUAL BACKGROUND

1. Alberto-Culver incorporates by reference the allegations in its Complaint and its responses to Defendants' Counterclaim above as if fully set forth herein.

2. Defendants materially breached the TSA for the reasons set forth in Alberto-Culver's Complaint.

3. Defendants delivered products under invoice numbers 024 / 5540000200, 024 / 5540000204, 024 / 5540000208, and 024 / 5540000214 that were defective and/or did not comply with the TSA, which constitutes further material breach of the TSA by P&G.

4. As a result of Defendants' breaches of the TSA, Alberto-Culver has suffered damages in an amount that exceeds the damages sought by Defendants in Defendants' Counterclaim.

## FIRST AFFIRMATIVE DEFENSE

Pursuant to U.C.C. § 2-717, Alberto-Culver was and is entitled to withhold payment under invoices 024 / 5540000200, 024 / 5540000204, 024 / 5540000208, and 024 / 5540000214 as a set-off against its damages resulting from Defendants' breaches of the TSA.

## SECOND AFFIRMATIVE DEFENSE

Defendants have not performed their obligations under the TSA and have materially breached the TSA.

**WHEREFORE,** Alberto-Culver prays for the following relief:

(a) That Defendants' counterclaims be dismissed with prejudice and that judgment enter upon them for Alberto-Culver;

(b) That the Court award the relief sought in Alberto-Culver's Complaint;

(c) That the Court award to Alberto-Culver its reasonable attorneys' fees and costs herein; and

  (d)  That the Court award such other relief as it deems appropriate.

Dated: January 11, 2010        */s/ Brian D. Sieve, P.C.*

                  Brian D. Sieve, P.C.
                  Terrence J. Dee, P.C.
                  Kirkland & Ellis LLP
                  300 North LaSalle
                  Chicago, Illinois 60654
                  Telephone: (312) 862-2000
                  Facsimile: (312) 862-2200
                  brian.sieve@kirkland.com
                  terrence.dee@kirkland.com

                  *Counsel for Plaintiff Alberto-Culver USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2010, a true and correct copy of the foregoing Alberto-Culver USA, Inc.'s Answer to Defendants' Counterclaim was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*Brian D. Sieve, P.C.*
Brian D. Sieve, P.C.